# In the United States Court of Federal Claims

| |  |
|---|---|
| HELEN PROCTOR, | |
|                 Plaintiff, | No. 23-cv-2077 |
|   v. | (Filed: July 31, 2025) |
| THE UNITED STATES, | |
|                 Defendant. | |

Julius D. Kearney, Sr., Kearney Law Offices, Pine Bluff, AR, for Plaintiff.

Isabelle Aubrun, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Albert S. Iarossi, Assistant Director.

## OPINION AND ORDER

Meriweather, Judge.

      Plaintiff, Helen Proctor ("Ms. Proctor"), a United States Department of Agriculture ("USDA") Section 502 Direct Loan recipient, brings this action against USDA, USDA Rural Development Agency ("RD"), and Thomas J. Vilsack, in his official capacity as the acting Secretary of Agriculture, alleging claims for breach of contract, as well as violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555; the Fair Housing Act ("FHA"), 42 U.S.C. § 3601; and the Due Process Clause of the Fifth Amendment. Specifically, Ms. Proctor contends that the United States breached the relevant contract when it foreclosed on her home construction loan and that RD's administration of the Section 502 Loan Program was arbitrary and capricious. The United States filed a Motion to Dismiss, ECF No. 7, for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, arguing therein that Ms. Proctor's claims are time-barred and otherwise deficient. Having reviewed the parties' briefs[1] and the relevant law, and for the reasons explained below, the Court **GRANTS** the United States' Motion to Dismiss.

---

[1] This opinion is based on the following filings: Compl., ECF No.1; Exs. to Compl., ECF No. 1-1 ("Compl. Ex."); Def.'s Mot. to Dismiss, ECF No. 7 ("Mot."); Pl.'s Opp'n to Mot. to Dismiss, ECF No. 8 ("Opp'n"); Def.'s Reply in Opp'n to Mot. to Dismiss, ECF No. 10 ("Reply"). Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is designated with an asterisk (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

## BACKGROUND[2]

### A. Factual Background

The Section 502 Loan Program aims to "provide low- and very low-income people who will live in rural areas with an opportunity to own adequate but modest, decent, safe, and sanitary dwellings and related facilities." 7 C.F.R. § 3550.2; *see also id.* § 3550.51 ("[A]uthoriz[ing] the Rural Housing Service (RHS) to provide financing to help low- and very low-income persons who cannot obtain credit from other sources obtain adequate housing in rural areas."); *id.* § 3550.52 ("Section 502 funds may be used to buy, build, rehabilitate, improve, or relocate an eligible dwelling and provide related facilities for use by the borrower as a permanent residence."). Pursuant to Section 502, USDA promulgated guidance on implementing the Loan Program, i.e., the "Field Handbook," which guides agency employees overseeing the Section 502 Loan process to ensure "that basic legal and administrative requirements are met." USDA, "Rural Development Direct Single Family Housing Loans and Grants—Field Office Handbook," HB-1-3550 at 1-1 (rev'd Dec. 10, 2020) [hereinafter, Field Office Handbook].

Ms. Proctor, a resident of Lake Village, Arkansas, with a three-acre home site, was found eligible for a Section 502 Loan on November 28, 2006. *See* Compl. ¶¶ 1, 2. Ms. Proctor was approved for the loan on October 21, 2008, for a construction amount of $99,500. *See* Compl. ¶ 11; Mot., Appx. 1–3. On December 9, 2008, Ms. Proctor and the RD agent executed a promissory note and mortgage at a preconstruction conference. *See* Compl. ¶ 11; Compl. Ex. at *35–36; Mot., Appx. 4–12, 13–19. Also on December 9, Ms. Proctor and Scott & Sons Construction[3] ("Scott") executed the construction contract at issue, wherein Scott agreed to follow Ron Litton's ("Mr. Litton") architectural plans. *See* Mot., Appx. 20–24; Compl. Ex. at *42–46; Compl. ¶ 11. During the RD contractor review process, RD staff failed to notify Ms. Proctor that Scott lacked a contractor's license, experience building single-family homes, or the "licensure and experience [] required by USDA rules." Compl. ¶¶ 11, 12, 27(c); *see also* Compl. Ex. at *33 (activating Scott's building license on March 18, 2009). Construction was scheduled to begin on January 15, 2009; however, construction was almost immediately delayed because Scott lacked the requisite construction licensing. *See* Compl. Ex. at *34; Compl. ¶¶ 11, 12, 27(f); Mot., Appx. 20–24. Construction ultimately began in March of 2009. *See* Opp'n at 7. To date, construction remains incomplete. *See* Compl. ¶ 45.

Ms. Proctor alleges that "[a]lmost immediately," after executing the contract, Scott failed to "conform to the contract timelines, building specifications, and applicable codes," Compl.

---

[2] As this case is at the motion-to-dismiss stage, this Opinion recites and assumes the truth of the factual allegations in the Complaint. *See General Mills Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1371 n.1 (Fed. Cir. 2007); *Cotter Corp. (N.S.L.) v. United States*, 165 Fed. Cl. 138, 145 (2023).

[3] The parties disagree about whether the local RD recommended Scott to Ms. Proctor. Compl. at ¶ 10. Ms. Proctor states that Scott was "sent by RD." *Id.* ¶ 27. However, the United States describes Scott as the "builder of [Ms. Proctor's] choice." Mot. at 4.

¶ 12, despite repeated warnings from Ms. Proctor and her representative, Hal Palmer ("Mr. Palmer"), to RD that Scott's conduct amounted to an "extreme deviation from the contract," including: installing unsafe wiring, failing to connect plumbing to a water source, installing a septic system improperly, and incorrectly applying for a waste disposal plan. *Id.* ¶ 13; *see also* Compl. Ex. at *98–99. Ms. Proctor raised approximately 15 written complaints between May 29, 2009, and August 5, 2009. *See* Compl. ¶ 27(h). Meanwhile, Scott made unilateral changes to the architectural plan without obtaining the required consent from Ms. Proctor or RD staff. *See id.* ¶ 17 (citing Field Office Handbook at Chap. 5 § 6 ¶ 5.26). Ms. Proctor maintains that throughout the construction process and RD's multiple inspections, the RD staff "consistently approved work that clearly violated their contract, policies[,] procedures," Compl. Ex. at *51, and state plumbing, electric, and building codes. *See* Compl. ¶ 27(j); Compl. Ex. at *26 (detailing building deficiencies related to the Arkansas Fire Prevention Code, the Arkansas Mechanical Code, and the Arkansas Energy Code), *27 (requiring changes to plumbing and natural gas violations), *28 (reporting violations with the HVAC system and finding the HVAC job incomplete).

  Along with the written complaints, Ms. Proctor contacted Mr. Litton to compare the building to his blueprints. Mr. Litton confirmed that the building, as it currently stands, has "material and detrimental changes or errors." Compl. ¶ 17; *see also* Compl. Ex. at *23–25. To deviate from the blueprint, Scott needed a change order approved by RD and Ms. Proctor. *See* Mot., Appx. 24 (citing Field Office Handbook at Chap. 5 § 6 ¶ 5.26); *see also* Compl. Ex. at *100 ("If the contractor changes or deviates from the plan then a completed 'change order' will only be acceptable with the approval of the Borrower or Borrowers' representative [] in conjunction with the approval of the [RD] representative."). Here, "extreme deviations from the blueprint and contract" occurred without any change orders. Compl. ¶ 27(k). These unauthorized changes were discussed in a meeting between Ms. Proctor, Scott, and RD on October 5, 2009. *See* Compl. Ex. at *100–02 (detailing the issues and concerns discussed between the parties and the requests from Mr. Palmer that Scott remedy the issues so that performance followed the contract specifications). Following that meeting, RD sent a letter to Scott with Ms. Proctor's conditions regarding the continued construction of the dwelling, but— Scott rejected those conditions. *See id.* at *103.

  In September 2009, Ms. Proctor fired Scott and proposed "a total of four (4) contractors" to complete construction. Compl. Ex. at *50; *see also* Compl. ¶ 31. RD "refused to work with any of the proposed contractors" and closed out the loan account. Compl. Ex. at *50; *see also* Compl. ¶¶ 27(u), 31; Mot. at 5.

  In 2010, Ms. Proctor invited two independent inspectors to the property. Sylvester Pomerlee ("Mr. Pomerlee")—a former USDA/RD Supervisor—found deficiencies in the siding, electrical work, attic insulation, and windows. *See* Compl. Ex. at *63–64. Several items were incomplete including the plumbing insulation, septic field, sewage disposal system, and a/c-heat vent. *Id.* at 63. Additionally, Scott failed to install the a/c condensing unit, porch columns, gutters and downspouts. Mr. Pomerlee recommended "that necessary funds be made available with no additional cost to the homeowner" for any "shortfall" caused by "the poor workmanship performed by [Scott]." *Id.* at 64. The second inspector, Anthony Utsey, completed an extensive report affirming that several items were incomplete and that at least nine items could not be

3

"corrected without defacing or disassembling the structure or it's [sic] components," as the tasks "should have been done during construction." Compl. Ex. at *90; *see also id.* at *65–91. Thus, Ms. Proctor contends that throughout the construction process and RD inspections, the RD "repeatedly and consistently violated and/or ignored USDA rules and regulations aimed at protecting the interests of the agency and the borrower." Compl. ¶ 13.

Despite the multiple, confirmed construction errors, USDA made a septic system payment and several partial payments ("Partial Payments") to Scott "until Ms. Proctor terminated her contract with Scott [Construction]." Compl. ¶ 27(o), (p), (s); Mot. at 12. The Partial Payments, totaling $45,969, were made after RD inspections, between the dates of May 18, 2008, and August 25, 2009. *See* Compl. Ex. at *11, *20; Compl. ¶ 27(o). Ms. Proctor objected to the Partial Payments and did not sign the final cashier's check. *See* Compl. ¶ 27(o); Compl. Ex. at *20, *61 (acknowledging the bank deposited a check without Ms. Proctor's signature). Ms. Proctor contends the payments were "for work far above the effective [required] level of completion" under the Agency Field Handbook. Compl. ¶ 27(n); *see also* Field Office Handbook at Chap. 5 § 6 ¶ 5.24.

In 2009, USDA foreclosed on Ms. Proctor's loan and accelerated the mortgage payments. Compl. ¶¶ 18, 31, 46; *see also* Mot. at 4 (noting that the construction loan agreement required repayment beginning March 9, 2009); Mot., Appx. 10–12, 13–19 (mortgage memorializing the loan agreement). During the collection process USDA sought repayment from Scott. *Proctor v. Vilsack*, No. 22-cv-157, 2023 U.S. Dist. LEXIS 171499, at *3 (E.D. Ark. Sep. 26, 2023). From 2019 to 2022, USDA garnished Ms. Proctor's Social Security benefits. *See* Compl. at ¶ 31; Mot. at 16. USDA's last loan-servicing action took place on August 4, 2015. *See* Mot. at 5; *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *3.

Along with the complaints made to RD, Ms. Proctor made a USDA hotline complaint reporting the construction deficiencies and the conduct of USDA employees handling her file. *See* Compl. Ex. at *18. In May 2015, Ms. Proctor filed a disability discrimination complaint with USDA Office of the Secretary of Civil Rights ("OASCR"). *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *3–4. The agency complaints are discussed below.

## B. Procedural Background

### 1. *Administrative Complaints*

In 2012, Ms. Proctor filed a USDA hotline complaint[4] ("Hotline Complaint"). *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *3; *see also* Compl. Ex. at *18–22 (USDA letter discussing the Hotline Complaint). USDA's Office of Human Resource Management ("OHRM") began investigating the Hotline Complaint, but determined it had insufficient resources to audit the local RD loan program. *See* Compl. Ex. at *18, *21. Consequently, the OHRM referred the Hotline Complaint to USDA Office of Inspector General with an initial report. *Id*. The OHRM Investigation Referral acknowledges that the structure built by Scott did not meet the

---

[4] Ms. Proctor's Hotline Complaint number is PS-049909591.

4

construction plan and failed to provide a septic or water system. *See* Compl. ¶ 14. Moreover, RD staff that completed inspections of the construction did not note the "contractor's failure to follow the architect's plan." Compl. Ex. at *19. Further, Scott received funds from the government—despite incomplete work—and was non-responsive to requests to explain the building deficiencies making the home uninhabitable. *Id.* The OHRM letter highlights concerns about "potential gaps" between the handbook requirements and the administration of the loan, including RD's "oversight responsibilities" that exist to ensure the loan money is used in accordance with the contract—a component guaranteed through the inspection process and construction agreement. *Id.* 18–21 (listing when the loan funds were taken for unintended purposes, such as, construction failing to conform with the architectural designs and money being issued without a percolation test and for tasks that were incomplete).

In 2015, Mr. Palmer filed a disability discrimination complaint[5] ("Discrimination Complaint") on behalf of Ms. Proctor with OASCR. *See* Compl. at ¶ 13. "From 2009 until late 2018, . . . RD employees at various levels indicated that [Ms. Proctor's] complaints were still under review" and a construction project was being contemplated. Compl. ¶ 18. In 2019, the Office of the Inspector General improperly dismissed the Hotline Complaint as being redundant, believing the issues were raised in the Discrimination Complaint. *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *3. Ms. Proctor's Discrimination Complaint did not fully address the Hotline Complaint which included concerns about USDA's conduct. *Id.* at *3–4. USDA concluded that Ms. Proctor had not been discriminated against and the decision was affirmed on appeal on February 15, 2020. *See* Compl. at ¶ 18; Mot. at 9.

### 2. *District Court Proceedings*

In July 2021, following the agency complaints, Ms. Proctor filed a complaint against Mr. Vilsack, in his official capacity; Michael Scott; and Scott & Sons Construction in the Eastern District of Arkansas. The complaint was voluntarily dismissed without prejudice. *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *4. On September 9, 2022, Ms. Proctor filed a new lawsuit against USDA and Scott. *Id.* at *5. That court granted the United States' Motion for Summary Judgment, concluding that the court lacked jurisdiction over Ms. Proctor's breach-of-contract claim[6] against the United States and that her APA claim was time-barred. *Id.* at *9–10; *see also* Compl. Ex. at *1. The court reasoned that USDA's last action occurred, "at the latest," on August 4, 2015, when taking its last loan servicing action. *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *7. The District Court determined that the complaint was filed more than seven years after the relevant date, falling outside of the APA six-year statute of limitations. *Id.* at *7.

### 3. *The Current Litigation*

On December 6, 2023, Ms. Proctor filed her Complaint in this Court. *See generally* Compl. She alleges USDA "illegally foreclose[d] on [her] mortgage and intercept[ed] [her]

---

[5] Ms. Proctor's claim can be found at docket number RD-15-7185. Compl. ¶ 18.

[6] The court found the breach-of-contract claim to be timely filed under the Arkansas savings statute. *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *5–6.

5

Social Security benefits" after "fail[ing] and refus[ing] to fairly and humanely enforce [USDA's] rules and regulations [and] acting arbitrarily and capriciously in doing so, including bad faith and abusive acts." *Id.* ¶ 5.  Ms. Proctor's First Claim for Relief is a Breach of Contract by RD arising from RD's "intentional failure to follow its rules and law" causing Ms. Proctor "to live for many years in grossly deficient housing." *Id.* ¶ 32.  Ms. Proctor's Second Claim[7] is for the "arbitrary and capricious" administration of the Section 502 Program. *Id.* at 19.  Ms. Proctor alleges USDA "failed and refused" to provide her the mandated homeowner education, "ignored the Agency Field Office Handbook" and "acted intentionally or negligently to deny [Ms. Proctor] her right to contracts and other benefits." *Id.* ¶¶ 10, 37.  Ms. Proctor's Claims for Relief do not include an FHA claim; yet Ms. Proctor states the RD's actions "contravene[d] its obligations to affirmatively further fair housing required by the [FHA]." *Id.* ¶ 4.  Further, in the Opposition, Ms. Proctor explains she is "suing the United States for breach of contract under the [FHA]," as the RD was obligated to follow "FHA guidelines." Opp'n at 7.  Ms. Proctor "seeks injunctive and declaratory relief and damages to ensure that she is made whole" including requests for "restructuring of her mortgage, the restoration of intercepted Social Security benefits, and a requirement that RD authorize and monitor the construction of a decent single-family home." Compl. ¶ 6.

The United States filed the instant Motion to Dismiss, ECF No. 7, followed by Ms. Proctor's Response, ECF No. 8.  The United States filed a Reply. *See* ECF No. 10.  The Court resolves this motion without holding oral argument.

## LEGAL STANDARD

### A. Subject Matter Jurisdiction

When jurisdiction is challenged under Rule of Court of Federal Claims ("RCFC") 12(b)(1), the "[p]laintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Park Prop. Assocs., L.P. v. United States*, 916 F.3d 998, 1002 (Fed. Cir. 2019).  The "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016) (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)).  The United States Court of Federal Claims has limited jurisdiction and may only hear a claim against the United States if Congress has specifically waived the government's sovereign immunity from such a suit. *United States v. Testan*, 424 U.S. 392, 397–98 (1976).

Under the Tucker Act, the Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act "does not, of itself, create a substantive right enforceable against the United States

---

[7] Although the Complaint titles the APA claim as the "Third Claim for Relief," this appears to be in error. *See* Compl. at 19.  Thus, the "Third Claim" in the Complaint is treated as Ms. Proctor's Second Claim.

. . . ." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to establish jurisdiction in this Court, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id*. Moreover, the plaintiff "must present a claim for 'actual, presently due money damages from the United States.'" *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)). The Court may consider public records including "cases of public record in which [plaintiff] was a litigant." *Jarvis v. United States*, No. 2022-cv-1006, 2022 WL 1009728 at *3 (Fed. Cir. Apr. 5, 2022) (citing *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015)).

## DISCUSSION

The United States has moved to dismiss the Complaint pursuant to RCFC 12(b)(1) and argues that Ms. Proctor's claims are time-barred under the Tucker Act's six-year statute of limitations. *See* Mot. at 8–12. Alternatively, the United States also moves to dismiss pursuant to RCFC 12(b)(6) for Ms. Proctor's alleged failure to state a cognizable breach-of-contract claim, Mot. at 11–15, maintaining that "none of Ms. Proctor's remaining allegations" arising under a "variety of other theories related to [Ms. Proctor's] alleged breach of contract" establish a "viable claim for relief within the Court's jurisdiction." *Id.* at 15–16. Next, the United States contends that Count Two of the Complaint—Ms. Proctor's APA claim—should be dismissed for lack of jurisdiction, noting that the Court lacks jurisdiction over Ms. Proctor's demands for declaratory and injunctive relief and for claims against individually named defendants. *See id.* at 16–18. As explained below, the Court concludes that it lacks subject matter jurisdiction over Ms. Tucker's contract and FHA claims, and that the APA claims are untimely. Therefore, the Court finds it unnecessary to reach the United States' alternative request that this case be dismissed for failure to state a claim.

### I. The Court Lacks Subject Matter Jurisdiction Over the Breach-of-Contract Claim and Any Claim Premised on the FHA

#### A. <u>The Breach of Contract Claim Raised in Count I is Barred by the Statute of Limitations</u>

For the Court to have jurisdiction, a claim against the United States must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501. In this Court, "[c]ompliance with the statute of limitations is a jurisdictional issue." *Ohio v. United States*, 162 Fed. Cl. 476, 482 (2022); *see also Graves v. United States*, 160 Fed. Cl. 562, 567 (2022), *aff'd*, No. 2022-cv-2182, 2024 WL 3755668 (Fed. Cir. Aug. 12, 2024) (citation modified). The statute of limitations is "absolute" and is "not subject to equitable tolling." *Hamilton Square, LLC v. United States*, 160 Fed. Cl. 617, 623 (2022) (citing *Sand & Gravel*, 552 U.S. at 134–39). When a claim is filed outside of the statute of limitations, the Court lacks jurisdiction and "cannot proceed at all in any cause." *Upshaw v. United States*, 755 F. App'x 980, 981 (Fed. Cir. 2018) (quoting *Ex parte McCardle*, 74. U.S. 506, 514 (1868)). Ms. Proctor bears the burden of demonstrating the "jurisdictional timeliness" of her breach-of-contract claim. *Prewitt v. United States*, 174 Fed. Cl.

759, 768 (2025) (quoting *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998)).

The statute of limitations "clock [] begins to run from the date the plaintiff's cause of action 'accrues.'" *Hair v. United States*, 350 F.3d 1253, 1260 (Fed. Cir. 2003). A breach-of-contract claim accrues "when the breach occurs" or "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Hood v. United States*, 659 F. App'x. 655, 662–63 (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003)). Ms. Proctor alleges that USDA breached the contract by failing to "perform the required monitoring, oversight and project management functions mandated by the Field Office Handbook." Compl. ¶ 30. Ms. Proctor contends, among other allegations, that RD staff allowed Scott to continually make unilateral changes to the architectural plan and accepted work in violation of state plumbing, electric, and building codes. *See* Compl. ¶¶ 17, 27(j). Additionally, RD "foreclosed the mortgage and intercepted [Ms. Proctor]'s Social Security benefits payments." *Id.* ¶ 31.

The District Court for the Eastern District of Arkansas determined that Ms. Proctor's breach-of-contract claim accrued no later than August 4, 2015, which was the date of the last loan-servicing action—and the latest possible date that the breach of contract could have occurred. *See* Mot. at 9; *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *6, *7. The breach-of-contract claim in those district court proceedings was deemed timely because the complaint was treated as if it had been filed in July 2020, under an Arkansas savings statute that essentially allowed Ms. Proctor's more recent complaint to relate back to the previously dismissed one. *See Proctor*, 2023 U.S. Dist. LEXIS 171499, at *6. No similar savings statute exists that would apply in this Court.

The doctrine of collateral estoppel, or issue preclusion, prevents the parties from relitigating issues that were resolved in the prior district court proceedings.[8] Issue preclusion applies if "(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action." *Angel v. United States*, 172 Fed. Cl. 102, 116 (2024) (citing *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012)). Rulings regarding a court's jurisdiction in the first action "are given preclusive effect if these conditions are met." *Id.*

The Eastern District of Arkansas addressed two issues that have preclusive effect for any statute of limitations issues presented in this case: (1) the date on which the contract claim accrued; and (2) the timeliness of the Eastern District of Arkansas complaint. Both issues were actually decided and necessary to the court's jurisdictional analysis, and the parties had an

---

[8] Trial courts may consider the issue of collateral estoppel sua sponte. *See Phoenix Light SF Ltd v. Bank of New York Mellon*, 66 F. 4th 365, 373 (2d Cir. 2023) (noting that the district court "was permitted to consider the affirmative defense of issue preclusion" despite defendant's failure to plead it); *Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1308 (noting that "preclusion issues may be raised by a court sua sponte"). Accordingly, the United States' failure to raise that defense does not preclude the Court from applying collateral estoppel to dismiss the APA claims.

opportunity to litigate them. That court's resolution of the ultimate question of the timeliness of the breach-of-contract claim differs from the timeliness issue presented here, because the complaint in that court was filed three years earlier than the currently pending Complaint. Consequently, this Court must determine whether Ms. Proctor's Complaint in the Court of Federal Claims is timely, using the accrual date that the district court identified: August 4, 2015.

Ms. Proctor filed the present Complaint on December 6, 2023, more than eight years after the August 4, 2015 date of accrual. Thus, Ms. Proctor's breach-of-contract claim is plainly barred by the statute of limitations.

### B. Any FHA Claim is Outside of the Court's Jurisdiction

Ms. Proctor alleges breach of contract under the FHA as RD failed to satisfy the "very specific obligations" that the FHA "place[s] on RD." Opp'n at 28; *see also* Compl. ¶ 4. She maintains that the FHA "required that construction meet RD specifications, conform to the architectural drawings, and be decent, safe, and sanitary, meeting all applicable State [sic] and local codes." Opp'n at 27 (emphasis removed). The FHA directs individuals to file claims in the "United States district court or State court not later than [two] years after the occurrence" of the alleged discrimination or breach. 42 U.S.C. § 3613. A "specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute"; therefore, the district courts, rather than the Court of Federal Claims, have jurisdiction over Ms. Proctor's FHA claim. *United States v. Bormes*, 568 U.S. 6, 12 (2012); *see also Allen v. United States*, 153 Fed. Cl. 1, 5 (2021) (directing FHA litigants to district courts); *Bush v. United States*, 627 F. App'x 928, 930 (Fed. Cir. 2016) (same). Consequently, Ms. Proctor's FHA claims are outside of the Court's jurisdiction.

When jurisdiction "ceases to exist, the only function remaining to the [C]ourt is that of announcing the fact and dismissing the case." *Upshaw*, 755 F. App'x at 981. Here, Ms. Proctor's claims are outside of the statute of limitations and must therefore be dismissed.

### II. The District Court's Dismissal of Ms. Proctor's APA Claim Has Preclusive Effect and Bars Ms. Proctor From Litigating the Same Claim Here

In the Eastern District of Arkansas proceedings, Ms. Proctor alleged that the USDA's handling of the construction loan and its response to her dissatisfaction with Scott Construction's work, and her proposal to replace Scott Construction with new contractors, violated the APA. *See Proctor*, 2023 U.S. Dist. LEXIS 171499, at *2–4. Specifically, she alleged that the USDA failed to follow its rules and regulations, improperly distributed funds to Scott, and disregarded her complaints and objections. *See* Complaint at ¶¶ 42–54, *Proctor*, 2023 U.S. Dist. LEXIS 171499, ECF No. 1. The district court concluded that those claims were time-barred and dismissed them. *See Proctor*, 2023 U.S. Dist. LEXIS 171499, at *8. Under the APA, a claim accrues when the plaintiff has a "'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 809 (2024) *(*quoting *Green v. Brennan*, 578 U.S. 547, 554 (2016)). The district court reasoned that "USDA's actions providing the bases for Proctor's APA claim occurred at the latest, in August 4, 2015, when USDA took its last loan servicing action on Proctor's loan,"

but her case was filed "more than seven years later." *Proctor*, 2023 U.S. Dist. LEXIS 171499, at *7–8. The statute of limitations for APA claims is six years, and therefore the APA claims were "time barred and must be dismissed." *Id.* at *8.

The doctrine of issue preclusion, or collateral estoppel, precludes Ms. Proctor from relitigating the APA claims in this Court. As noted above, issues that were decided in the prior case cannot be raised here, provided that the remaining conditions of issue preclusion are met. That Court clearly addressed the timeliness of the APA claims, and its holding "precludes this court from considering the timeliness issue again." *Angel*, 172 Fed. Cl. at 117. Therefore, even assuming for purposes of this opinion that the APA claims could fall within this Court's limited jurisdiction, the claims cannot be heard because they already have been deemed untimely.

### III.    The Complaint Requests Relief Beyond This Court's Jurisdiction

In addition, Ms. Proctor requests relief beyond the limited and specific jurisdiction of the Court. Ms. Proctor seeks relief including: (i) a declaration that the Defendants' acts violated the Fifth Amendment and USDA statutes, regulations, and handbooks; (ii) a declaration that the Defendants "acted without authority in foreclosing [Ms. Proctor's] mortgage" and diverting her Social Security benefits; and (iii) an injunction requiring the Defendants to restructure the mortgage, correct construction errors, add funds to the construction loan, reimburse Ms. Proctor her Social Security benefits, and provide compensatory damages. Compl. at 22.

While the Tucker Act permits the Court to "grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, . . . there is no provision giving the Court [] jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief." *Nat'l Air Traffic Controllers*, 160 F.3d at 716; *see also Stephanatos v. United States*, 81 Fed. Cl. 440, 445 (2008) ("It is rudimentary that the Court of Federal Claims lacks jurisdiction to grant general equitable relief.") (citing *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997)). This Court may grant declaratory relief, "under limited circumstances" such as in bid protests or "where the declaratory relief requested is 'an incident of and collateral to a money judgment.'" *Stephanatos*, 81 Fed. Cl. at 445 (quoting *James v. Caldera*, 159 F.3d 573, 580–81 (Fed. Cir. 1998)).

Ms. Proctor's requests for equitable relief do not fall within any of this Court's limited equitable powers. Further, because Ms. Proctor's claims are not properly before this Court, the issue of equitable relief is moot.

10

## CONCLUSION

For the foregoing reasons, the Court concludes that Ms. Proctor's claims are subject to dismissal pursuant to RCFC 12(b)(1) and under the doctrine of issue preclusion. Accordingly, the Court hereby **GRANTS** the United States' Motion to Dismiss, ECF No. 7. The Clerk shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED.**

ROBIN M. MERIWEATHER
Judge